UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

              Plaintiff,          Criminal No. 24-20668

v.

                                      Hon. Matthew F. Leitman

Dovid Akiva Shenkman,

              Defendant.

_____/

## **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SET ASIDE AND REVOKE THE ORDER OF DETENTION (ECF NO. 19)**

Dovid Akiva Shenkman brought child pornography into the United States when coming back into the country after visiting Canada. A Special Agent with HSI and a CBP officer saw videos on Shenkman's phone involving the rape of pre-pubescent children. Not occurring in a vacuum, Shenkman had been identified in a New York investigation into the historical trafficking of child pornography and a watch had been placed on his name. When interviewed by Pretrial Services, Shenkman lied about whether his home in New York is near parks or schools, and told Pretrial Services that he had children from the community over for dinners but could not (or would not) say how often

1

or whether they come with a parent.

Following a detention hearing on November 27, 2024, Magistrate Judge Anthony P. Patti ordered Shenkman detained pending trial. *See* ECF No. 13, PageID.23-25. Shenkman now moves to revoke that order of detention. Because no condition or combination of conditions can protect the community from Shenkman, the Court should deny his motion and he should remain detained pending trial.

## Statement of Facts

### I.    Offense Conduct

On November 24, 2024, at approximately 4:45 p.m., a Customs and Border Protection Officer (CBPO) at the Ambassador Bridge Port of Entry in Detroit, Michigan encountered Shenkman while he was trying to enter the United States from Canada. Shenkman's name had been flagged by HSI New York due to an investigation related to the distribution and receipt of child sexually abusive material. Shenkman was directed to the secondary inspection area. When he exited his vehicle, border officers told Shenkman to leave his electronic devices, including cell phones, in the car; but Shenkman insisted on keeping one phone with him, telling officers that it did not work. Border officers

again told Shenkman to leave his device in the car, and he complied.

Once inside the secondary inspection area, Shenkman told border officers that he had been visiting friends in Canada for a party. Border agents, with the on-duty HSI agent, did a border search of Shenkman's phones. Shenkman said he could not remember the password for his cell phone, but unlocked the phone with his thumb print. The phones were placed in airplane mode, meaning they were no longer connected to the internet and only files that were on the phone could be viewed.

Agents located and viewed the Telegram application on Shenkman's phone. Telegram is an encrypted social media application where users can send each other messages, images, and videos using the internet. Inside Telegram, agents saw a conversation that contained exchanges of multiple videos of child pornography. The conversation was as follows:

| | |
|---|---|
| SHENKMAN: | Yo |
| B.R.: | Hey |
| SHENKMAN: | This what your looking for |
| B.R.: | Yes! |
| SHENKMAN: | What do you have |
| B.R.: | Give me a second. Gotta move it out of the hidden folder. |
| SHENKMAN: | What folder is it in is it in a link send a link |
| SHENKMAN: | ? |
| B.R.: | No it's not a linked folder |

3

B.R. then shared several video of child pornography with Shenkman. One showed a pre-pubescent child licking an adult male penis as it ejaculated. Another video showed the same child being vaginally penetrated by what appeared to be an adult male penis. B.R. then shared another video of a different pre-pubescent child being penetrated from behind by what appeared to be an adult male. B.R. sent Shenkman another video with "CPlovere" displayed on the screen of the video and depicting a pre-pubescent child being vaginally penetrated by what appears to be an adult male penis and a pre-pubescent child licking an adult male penis as it ejaculated.

The following exchange then occurred:

> SHENKMAN: I have all the vids you sent in a mega link lol
> B.R.:             oh ok. You probably have everything I have then.
> SHENKMAN: lol maybe
> SHENKMAN: I'm looking for even more messed up stuff
> SHENKMAN: How are the knotty vids??
> SHENKMAN: What else you got

Shenkman then shared a video depicting a pre-pubescent female licking an adult male penis as it ejaculated. Shenkman then shared another video showing a pre-pubescent female being prompted by another female to be vaginally penetrated by what appears to be a pre-

pubescent males' penis.

The HSI Special Agent located another conversation in Telegram on Shenkman's cellphone between "Peyton" and "the dood," Shenkman's screenname. The videos within this conversation were not viewable because the phone was in airplane mode. However, there were dozens of times where it appeared that video files were exchanged during the conversation. At one point, Shenkman shared a video and then stated: "These two, I convinced her to do and now she is hooked, I just need to get her to make more videos." "Peyton" responded: "look at the cut marks on her arm kinda makes it even hotter."

Shenkman had the Telegram application on both phones, and agents found the videos on both phones. Law enforcement also observed videos involving bestiality on Shenkman's phones. The phones were seized and a search warrant obtained. Although unable to be forensically extracted at this time, a Special Agent was able to recover an SD card from one of Shenkman's phones. On the SD card is an Excel spreadsheet containing usernames and passwords. From the usernames listed in the document, an HSI agent requested any cybertips from the National Center for Missing and Exploited Children (NCMEC) related

to those usernames. The agent received two cybertips from NCMEC in response to his request. One was from Kik for an account with username "coolhvac" and email address bk.ny.craigslist@gmail.com from May 2021. (Notably, and as reported to Pretrial Services, Shenkman owns his own HVAC business in New York.) The tip provided that 10 files, 9 videos and 1 image, of suspected child sexually abusive material were uploaded in April 2021. The HSI agent viewed the videos and image associated with tip. All meet the federal definition of child pornography. Examples of the images/videos included in the tip are described below:

- File 0a98969-f180-4ac6-8ee5-e0e321d2e64c: This is a 54 second video depicting the close-up vaginal penetration of an infant/toddler female by a male penis (this video was provided by Kik twice and counts as part of the total 10).

- File 9da1c849-4d78-4c3c-96f1-7f00fa15f707; This is a 1 minute 58 second video depicting a partially dressed prepubescent female performing oral sex on a male penis then being vaginally penetrated.

The other cybertip came from Snapchat in July 2021 and relates to an account using email address "geradude@yahoo.com" and username "keevdood" uploading 3 files of suspected child sexually

abusive material. The HSI agent also reviewed these files and found

that all 3 meet the federal definition of child pornography (although one

involves a young teen girl who is postpubescent but appears under-age).

The other two files are:

- keevdood-None-01358d80-6e49-5398-8227-fefdff2de699~67-13bcbe7eec.mp4: This is a 36 second video that depicts a nude prepubescent female having a stuffed animal rubbed against her bare vagina by what appears to be an adult male hand.

- keevdood-None-01358d80-6e49-5398-8227-fefdff2de699~74-3610364641.mp4: This is a one minute thirty-five second video that depicts a nude female child wearing a mask with her hands cuffed together performing oral sex on an adult male. The video then cuts to what appears to be the same child wearing a mask with her arms bound above her head and her legs in the air, also bound to the bed. A hand spreads her bare vagina and anus and a what appears to be a sex toy is later placed on her anus and vagina.

## II.    Procedural History and Pretrial Services Interview

On November 25, 2024, a criminal complaint was filed and

Shenkman made his initial appearance, where he requested a detention

hearing. An amended criminal complaint was filed on November 27,

Case 2:24-cr-20668-MFL-EAS   ECF No. 21, PageID.89   Filed 12/26/24   Page 8 of 16

2024, and the Magistrate Judge held the detention hearing. But before the hearing, Pretrial Services interviewed Shenkman. During his interview, Shenkman reported that he lives in New York and moved to New Jersey at some point, but he did not know how long he had lived in either place. Shenkman also reported having no ties to Michigan and that his ties are to New York and New Jersey. Shenkman did not disclose the reason he was crossing the border from Canada into Michigan at the time of his arrest. Significantly, Shenkman told Pretrial Services that children from the community visit his home for meals; he could not recall how often they visit. He did not tell the Pretrial Services Officer if the children are accompanied by an adult during the visits. Shenkman also said that he did not do volunteer work in the community and said there were no parks, daycare centers, or schools near his home. But, when the Pretrial Services Officer did a Google search, she found multiple parks, playgrounds, and a daycare center very close (.2 to.5 miles) to Shenkman's home. Moreover, Shenkman's brother told Pretrial Services that he is known for his volunteer work in the community.

Following the hearing, Judge Patti ordered Shenkman detained

8

pending trial. On December 4, 2024, a grand jury returned an

indictment charging Shenkman with transportation of child

pornography and possession of child pornography. ECF No. 14.

Shenkman filed a motion to revoke Judge Patti's order of detention on

December 11, 2024.

## Argument

Under 18 U.S.C. § 3145(b), a defendant ordered detained by a

magistrate judge may move to revoke the detention order. The Court

reviews a defendant's appeal of an order of detention *de novo*. *United

States v. Manning*, No. 17-20469, 2018 WL 992220, at *4 (E. D. Mich.

Feb. 21, 2018) (*citing United States v. Leon*, 766 F.2d 77, 80 (2d Cir.

1985)).

Section 3142(g) of the Bail Reform Act sets forth the factors a

court must consider in determining whether a defendant should be

detained pretrial. These factors are: (1) the nature and circumstances of

the offense; (2) the weight of evidence against the person; (3) the history

and characteristics of the person; and (4) the danger and seriousness of

the danger to any person or the community should the defendant be

released. It should also be noted that there is a presumption of

9

detention in this case because the offense involves a minor. Each of the above-listed factors weighs in favor of Shenkman's detention.

## I.   Nature and Circumstances of the Offense – 18 U.S.C. § 3142(g)(1)

As Judge Patti found after presiding over the detention hearing, Shenkman has a "relentless and longstanding sexual interest in children, including child pornography (CP), [and that involves] rape, torture and infants, and in other sexually deviant practices (including bestiality)." ECF No. 13, PageID.25. Shenkman tried to bring two devices containing child sexually abusive material back into the United States after visiting friends in Canada. During his conversations with others about child pornography in an encrypted social media application, he asked for "even more messed up stuff" than a child performing fellatio on an ejaculating male penis and the vaginal rape of child. Shenkman also had various usernames spanning different social media platforms over the course of apparently several years, since the NCMEC tips associated with usernames listed in his current phone date back to 2021. Shenkman's transportation of child pornography shows his deep-seated sexual interest in children and evidences his

danger to the community. For these reasons, the nature and circumstances of Shenkman's offense weigh in favor of detention.

## II.    Weight of the Evidence of Dangerousness – 18 U.S.C. § 3142(g)(2)

The weight of the evidence of Shenkman' dangerousness is significant. Law enforcement observed multiple videos of child pornography on both of Shenkman's devices. Given that he lives in New York and went to Canada to visit friends, Shenkman twice-crossed an international border with child pornography. Moreover, Shenkman is associated with NCMEC tips from 2021. This all demonstrates that Shenkman has an unmitigated sexual interest in children. The weight of the evidence of dangerousness weighs in favor of Shenkman's detention.

## III.    History and Characteristics of Shenkman – 18 U.S.C. § 3142(g)(3)

Shenkman's history and characteristics also weigh in favor of detention. While Shenkman has no criminal history, he also has no ties to this District, a fact which makes his appearance at future court dates here questionable. But the most telling, and troubling, characteristic of Shenkman is his misrepresentation about himself to Pretrial Services.

11

Shenkman stated that children from his community go to his home, where he lives alone, for dinners. He could not recall or would not say how often or whether they had a parent with them. Further, he related to Pretrial Services that there were no parks, playgrounds, or schools near where he lived, the place he would return to if placed on bond. Pretrial Services readily discovered that Shenkman had been dishonest by doing a simple Google search and uncovering the location of multiple parks, playgrounds, and a daycare near Shenkman's home. Finally, Shenkman also stated that he did not volunteer in the community, a statement belied by his own brother who was providing verifications to Pretrial Services.

Although Shenkman claims to be pious and supported by his family and community, none of these things stopped him from engaging in the trafficking of child pornography over the course of several years. Rather, Shenkman has shown that he cannot be trusted to be truthful with the Court. The Court would be placing its trust in Shenkman if he is released on bond, and the consequence of a bond violation is the potential further victimization of children. Thus, Shenkman's history and characteristics weigh in favor of detention.

## IV.   Danger to the Community – 18 U.S.C. § 3142(g)(4)

There is no real way to protect the community from the kind of danger that Shenkman poses if he is released on bond. Shenkman used electronic devices and the internet to traffic in images and videos of children being raped. If released on bond, Shenkman would return to New York, where Pretrial Services in his District-of-residence would likely be tasked with supervising him. A bond condition like home incarceration would not protect the children from the community who go to Shenkman's home, maybe even without a parent, for dinners. It would be almost impossible to supervise Shenkman at his residence in a meaningful way that could ensure that he is not around children. Likewise, imposing a bond condition of internet monitoring would not prevent Shenkman from obtaining (or having someone bring him) new devices for Shenkman to use to skirt his conditions of bond and continue to engage in criminal behavior. The consequence of Shenkman continuing to possess, distribute, receive, or transport child pornography is physical and emotional trauma to children. Shenkman has shown himself to be a driver of the vile market for child pornography - a market where children are raped and that trauma

13

memorialized for all time, all for the sexual pleasure of viewers all over the world. Judge Patti's order of detention perfectly describes the nature of Shenkman's danger to the community and why this Court should keep him detained pending trial:

> Notably, [law enforcement agencies have] been receiving NCMEC tips with respect to Defendant's internet-based [child pornography] activity for a number of years. The Court does not believe that Defendant can stay away from [child pornography] for any length of time, regardless of what conditions it imposes, and further concludes that Defendant's abiding sexual interest in children puts minors at great risk.

ECF No. 13, Page.ID.25.

## Conclusion

Because he is a danger to the community, and no combination of conditions can ensure the safety of the community if he is released, the Court should deny Shenkman's motion to revoke the Magistrate Judge's order of detention and order that Shenkman remain detained pending trial.

Respectfully Submitted,

DAWN N. ISON
United States Attorney

*/s/ Tara M. Hindelang*
TARA M. HINDELANG
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9543
E-Mail: tara.hindelang@usdoj.gov

Date: December 26, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 26, 2024. I had the foregoing electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Tara M. Hindelang*
Tara M. Hindelang
Assistant U.S. Attorney
