UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,        Criminal No. 24-20668

v.

                            Hon. Matthew F. Leitman

Dovid Akiva Shenkman,

        Defendant.
_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S RENEWED MOTION TO SET ASIDE AND REVOKE THE ORDER OF DETENTION (ECF NO. 25)

Without a meaningful way to show that conditions of release could ensure the safety of the community considering his dangerousness, Shenkman again asks this Court to revoke the order of detention. Although Shenkman presents a proposed out-of-state residence and familial third-party custodian, the Court still cannot be sure that Shenkman will not continue his years-long devotion to exploiting children over the internet, and the risk to those whom Shenkman would harm if he were to continue is too great. The Court should again deny Shenkman's motion, keeping him detained pending trial.

1

## Updated Statement of Facts

The government relies on its description of the facts and procedural history set forth in its prior response, ECF No. 21, PageID.83-90.

### I.     Updated Information from Jail Calls

To supplement the facts previously set forth, the government also received Shenkman's jail calls from his time in the Midland County Jail. There are parts of the calls that the government has been unable to review because the languages spoken include Yiddish and Hebrew. However, the government received a partial translation of one call between Shenkman and an unknown male (likely his brother) from November 25, 2024, relatively soon after Shenkman's arrest. During the call, and out of nowhere, it sounds like Shenkman begins to speak a different language then says the word "refrigerator." The rest of the conversation, which contains many unintelligible portions and flows between English, Yiddish (italicized), and Hebrew (underlined), was as follows:

**Unknown Male 1-**
Yeah
**Shenkman-**
[UI] my refrigerator
**Unknown Male 1 -**
*You have to…* You have to understand, the <u>keep your mouth shut</u>

>has to be--
>**Shenkman-**
><u>I know</u>
>**Unknown Male 1 -**
>on the level
>**Shenkman -**
>I know. That's what I am saying my refrigerator has stuff in there that is going bad. There is food in there sitting that needs to be cleaned out
>**Unknown Male 1 -**
>*Akiva [PH] When you are among the gentiles, you have to be totally quiet. Don't talk at all.*
>**Shenkman -**
>*I understand. I've said that* [UI] *I understand but* [UI] *combination to go in..*[UI]
>**Unknown Male 1 -**
>In my home
>**Shenkman -**
>[UI] door combination
>**Unknown Male 1-**
>[UI]
>**Shenkman -**
>Hello…
>**Unknown Male 1-**
>*I have understood everything.*
>**Unknown Male (voice 1) -**
>*What?*
>**Unknown Male 1-**
><u>I understood, I understood, I understood.</u> Let me let me ask you. Are you okay?

The conversation shifts, but later returns to subject of Shenkman's

"refrigerator."

>**Unknown Male 1 -**
>No,no,no. I 'm just thinking what else
>we need to be accomplishing now. *What else do we need to discuss?*

3

>**Unknown Male 2-**
>…Fridge is going to stink up the place.
>**Unknown Male 1 -**
>I don't know.
>**Unknown Male 1 -**
>[UI]
>**Unknown Male 2 -**
>*What else? What else?*
>**Unknown Male 2-**
>**[UI]** *not…*
>**Unknown Male 2 -**
>*What else? What else? {UI] When you go into my house you can also take [UI] What else do I have? [UI] refrigerator. You still there?*
>**Unknown Male 1-**
>Yeah, yeah. [UI]
>**Unknown Male 1-**
>*I will go in tomorrow. What else?*

Then, on November 28, 2024, men were seen going into Shenkman's apartment removing items, and driving those items away. One man was observed walking out of Shenkman's house with a red tote-like bag that appeared to be hanging heavy. During other trips out of Shenkman's home, the men carried white totes, a white square-like box, a black garment bag, a blue square, a big box, a green bag, a white bag, and a book bag. These items were placed in awaiting vehicles, including a sedan registered to Shenkman. Agents have not yet been able to identify the individuals seen going into Shenkman's apartment and removing the items.

4

## II. Updated Information Regarding Shenkman's Cell Phone Forensics

Up until shortly after the hearing on Shenkman's first motion to revoke the order of detention, agents had been unable to forensically analyze the two phones seized at the time of his arrest after CBP officers and agents saw CSAM on the phones during a border search. Recently, however, an HSI agent was able to obtain an extraction of Shenkman's locked G8 Thin Q. This extraction is a full-file system extraction but may or may not contain all the contents in Shenkman's phone, because it is still in a locked state. Nonetheless, even with this type of extractions, the agent discovered hundreds of videos of obvious or suspected child pornography. The agent is still reviewing the files, but currently has 531 videos tagged for further review/confirmation that each file is CSAM. (Some previously believed to contain CSAM only depict bestiality). A sampling of the videos is below:

- A file titled 1_5075686144461505461.MP4 located at data/media/0/Android/data/org.telegram.messenger/files/Telegram/Telegram Video/.  This file is approximately 43 seconds long and depicts a prepubescent female child performing oral sex on an

adult male.

- A file titled 20ff47f0-96b6-11ef-a835-b1f8031a4ac5.MP4 located at data/swisscows.messenger.teleguardapp/cache/video. This file is approximately 1 minute and 50 seconds long and beings with a slide that states "Baby Lexxa 2008". This file depicts the sexual abuse of a female infant by an adult male or males on multiple occasions and ends with a slide that states "What a sexy little baby cunt! Maybe I'll shit on the bitch next time!"

- A file titled 59e369f0-a4fa-11ef-99d3-69854b6a9197.mp4 data/swisscows.messenger.teleguardapp/cache/video. This file is approximately 1 minute and 58 seconds in length and depicts a nude infant/toddler female being anally penetrated by an adult male finger. The male later rubs the child's bare vagina and ejaculates onto the child's face.

- A file titled da4eee70-9064-11ef-bbd0-6f0f4c018e24.mp4 located at data/swisscows.messenger.teleguardapp/cache/video. This file is approximately 48 seconds in lengths and depicts a nude female child wearing a dog collar performing oral sex on a dog.

Notably, the agent has discovered CSAM in Shenkman's device that he

has never encountered before in his ten years working child exploitation cases. The agent has also observed evidence of multiple social media applications on Shenkman's phone that the agent knows in his training and experience to be used in the trafficking of child pornography and/or exploitation of minors.

## Argument

As with the statement of facts and procedural history, the government relies on its previously raised arguments in response to Shenkman's request. Those arguments are supplemented below relating to the added information stated above.

Under 18 U.S.C. § 3145(b), a defendant ordered detained by a magistrate judge may move to revoke the detention order. The Court reviews a defendant's appeal of an order of detention *de novo*. *United States v. Manning*, No. 17-20469, 2018 WL 992220, at *4 (E. D. Mich. Feb. 21, 2018) (*citing United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)).

Section 3142(g) of the Bail Reform Act sets forth the factors a court must consider in determining whether a defendant should be detained pretrial. These factors are: (1) the nature and circumstances of

the offense; (2) the weight of evidence against the person; (3) the history and characteristics of the person; and (4) the danger and seriousness of the danger to any person or the community should the defendant be released. It should also be noted that there is a presumption of detention in this case because the offense involves a minor. Each of the above-listed factors, even considering Shenkman's proposed residence and third-party custody, weighs in favor of Shenkman's detention.

I. **Nature and Circumstances of the Offense – 18 U.S.C. § 3142(g)(1)**

As Judge Patti found after presiding over the detention hearing, Shenkman has a "relentless and longstanding sexual interest in children, including child pornography (CP), [and that involves] rape, torture and infants, and in other sexually deviant practices (including bestiality)." ECF No. 13, PageID.25. Shenkman tried to bring two devices containing child sexually abusive material back into the United States after visiting friends in Canada. During his conversations with others about child pornography in an encrypted social media application, he asked for "even more messed up stuff" than a child performing fellatio on an ejaculating male penis and the vaginal rape of child. Shenkman also had various usernames spanning different social

8

media platforms over the course of apparently several years, since the NCMEC tips associated with usernames listed in his current phone date back to 2021. Shenkman's transportation of child pornography shows his deep-seated sexual interest in children and evidences his danger to the community.

These arguments are bolstered by what the agent recently found in the extraction of Shenkman's G8 Thin Q phone, both in terms of the amount of child sexually abusive material but also its content. Further, the evidence of multiple social media accounts taken together with the information in the historical NCMEC tips may give cause for concern about whether Shenkman's exploitation activities exclusively include trafficking in images and videos. The nature and circumstances of Shenkman's offense weigh in favor of detention.

## II. Weight of the Evidence of Dangerousness – 18 U.S.C. § 3142(g)(2)

The weight of the evidence of Shenkman' dangerousness is significant. Law enforcement observed multiple videos of child pornography on both of Shenkman's devices. Given that he lives in New York and went to Canada to visit friends, Shenkman twice-crossed an international border with child pornography. Moreover, Shenkman is

associated with NCMEC tips from 2021. Also, the number of images and videos found in the recent extraction with the length of time Shenkman has been linked to the activity suggests that Shenkman's trafficking in child sexually abusive material is prolific. This all demonstrates that Shenkman has an unmitigated sexual interest in children. The weight of the evidence of dangerousness weighs in favor of Shenkman's detention.

### III. History and Characteristics of Shenkman – 18 U.S.C. § 3142(g)(3)

Shenkman's history and characteristics also weigh in favor of detention. While Shenkman has no criminal history, he also has no ties to this District, a fact which makes his appearance at future court dates here questionable. But the most telling, and troubling, characteristic of Shenkman is his misrepresentation about himself to Pretrial Services. Shenkman stated that children from his community go to his home, where he lives alone, for dinners. He could not recall or would not say how often or whether they had a parent with them. Further, he related to Pretrial Services that there were no parks, playgrounds, or schools near where he lived, the place he would return to if placed on bond. Pretrial Services readily discovered that Shenkman had been dishonest

10

by doing a simple Google search and uncovering the location of multiple parks, playgrounds, and a daycare near Shenkman's home. Finally, Shenkman also stated that he did not volunteer in the community, a statement belied by his own brother who was providing verifications to Pretrial Services.

Although Shenkman claims to be pious and supported by his family and community, none of these things stopped him from engaging in the trafficking of child pornography over the course of several years. This is why a third-party custodian is not appropriate in this situation. The government believes Shenkman has been involved in CSAM trafficking for years. The nature of this crime and determination of those who commit it make its immediate detection nearly impossible. Living out in the community with ways to have access to the internet without the knowledge of the third-party custodian is precisely why bond conditions are not adequate to protect the community from Shenkman.

Also, the jail call above and people subsequently removing things from Shenkman's apartment appears to be more than just a refrigerator clean-out. The Court cannot have confidence that Shenkman will not be

11

able to exercise undue influence over his family to get them to help him in some way that could result in a dangerous bond violation. Rather, Shenkman has shown that he cannot be trusted to be truthful with the Court. The Court would be placing its trust in Shenkman if he is released on bond, and the consequence of a bond violation is the potential further victimization of children. Thus, Shenkman's history and characteristics weigh in favor of detention.

### IV. Danger to the Community – 18 U.S.C. § 3142(g)(4)

There is no real way to protect the community from the kind of danger that Shenkman poses if he is released on bond. For years, Shenkman used electronic devices and the internet to traffic in images and videos of children being raped. If released on bond, Shenkman would go to New Jersey, where Pretrial Services there would likely be tasked with supervising him. It would be almost impossible to ensure that Shenkman does not gain access to an internet-capable device or that the items removed from his apartment are not waiting for him in New Jersey and do not contain CSAM.

The consequence of Shenkman continuing to possess, distribute, receive, or transport child pornography is physical and emotional trauma to children. Shenkman has shown himself to be a driver of the vile market for child pornography - a market where children are raped and that trauma memorialized for all time, all for the sexual pleasure of viewers all over the world. Through his messages in the chats observed at the time of his arrest and the content of the videos in his phone, Shenkman has also shown himself to be a consumer of the most unspeakable type of CSAM – the rape of infants.

Judge Patti's order of detention perfectly describes the nature of Shenkman's danger to the community and why this Court should keep him detained pending trial:

> Notably, [law enforcement agencies have] been receiving NCMEC tips with respect to Defendant's internet-based [child pornography] activity for a number of years. The Court does not believe that Defendant can stay away from [child pornography] for any length of time, regardless of what conditions it imposes, and further concludes that Defendant's abiding sexual interest in children puts minors at great risk.

ECF No. 13, Page.ID.25. Shenkman's proposal does nothing to mitigate Judge Patti's concern.

## Conclusion

Because he is a danger to the community, and no combination of conditions can ensure the safety of the community if he is released, the Court should deny Shenkman's renewed motion to revoke the Magistrate Judge's order of detention and order that Shenkman remain detained pending trial.

Respectfully Submitted,

Julie A. Beck
Acting United States Attorney

*/s/ Tara M. Hindelang*
TARA M. HINDELANG
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9543
E-Mail: tara.hindelang@usdoj.gov

Date: March 6, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2024. I had the foregoing electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Tara M. Hindelang*
Tara M. Hindelang
Assistant U.S. Attorney
