UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                DOCKET NO.: 0645 2:24CR20668-001
                                      HON. MATTHEW F. LEITMAN

vs

DOVID AKIVA SHENKMAN,

     Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

     The Defendant, DOVID AKIVA SHENKMAN, by and through his counsel, JAFFE

DEFENSE TEAM, P.C., by Jack L. Jaffe submits this Sentencing Memorandum as follows:

**I.      INTRODUCTION**

     On April 9, 2025, Dovid Akiva Shenkman pled guilty to Count I: Transportation of

Child Pornography in violation of 18 U.S.C. § 2252A(a)(1), (b)(1); and Count II: Possession of

Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). By pleading guilty Mr.

Shenkman has fully accepted responsibility for his conduct. Today, he asks this Court to weigh

all of the sentencing factors under 18 U.S.C. § 3553, with particular focus on:

1.  **The nature and circumstances of the offense, and the history and characteristics of
   the defendant**;

2.  **The need for the sentence** to (B) afford adequate deterrence to criminal conduct, (C)
   protect the public from further crimes of the defendant, and (D) provide the defendant
   with needed educational, vocational, medical, or other correctional treatment in the
   most effective manner; and

**JAFFE DEFENSE TEAM,
P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

3. **The need to avoid unwarranted sentencing disparities** among defendants with similar records and similar conduct.

Mr. Shenkman stands before this Court with no prior criminal history, a record of immediate acceptance of responsibility, and comprehensive psychological testing showing that he poses a **low to no risk of recidivism or escalation into sexual deviancy**. The Guidelines calculation of 151–188 months provides a starting point, not an end point. For the reasons fully set forth below, Mr. Shenkman, respectfully requests a sentence at the statutory minimum of five (5) years when considering all facts and circumstances.

## II.    FACTS

On November 24, 2024, Mr. Shenkman was arrested and charged in a two count indictment:

- Count I: Transportation of Child Pornography in violation of 18 U.S.C. § 2252A(a)(1), (b)(1); and
- Count II: Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).

Mr. Shenkman has been detained since his arrest after an initial appearance on November 25, 2024.

On April 9, 2025, Mr. Shenkman entered pleas of guilty as charged, without the benefit of a Rule 11 agreement. Nevertheless, Mr. Shenkman has fully accepted responsibility by admitting guilt at the earliest stage and sparing the government and the victims the necessity of trial.

Mr. Shenkman has fully accepted responsibility for his actions by pleading guilty to the charge and now asks this Court to give him the appropriate sentence of the minimum of 5 years which reflects both the seriousness of the offense and his mitigating circumstances.

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

2

### III.    MITIGATING EVIDENCE

#### a.  Psychiatric Evaluation by Dr. Gerald A. Shiener

In preparation for sentencing, Mr. Shenkman voluntarily underwent a comprehensive psychiatric evaluation conducted by **Dr. Gerald A. Shiener**, a respected psychiatrist. A copy of Dr. Shiener's report, dated **July 31, 2025**, is attached as **Exhibit A**. **See attached Ex. A. Psychiatric Evaluation, dated July 31, 2025.**

Dr. Shiener conducted extensive interviews, reviewed collateral information, and administered multiple objective risk-assessment instruments. His findings provide critical mitigating context:

1.  **Background and Trauma History**

    - Mr. Shenkman was raised in a dysfunctional household where police were frequently summoned due to domestic violence.

    - His development was marred by trauma, detachment, and difficulties with intimacy.

    - His reported sexual interest was not rooted in a predatory attraction to children but rather in a distorted attempt to "feel something" amid profound emotional disconnection.

2.  **Collateral Information**

    - Dr. Shiener interviewed family members and reviewed a document authored by a physician-psychiatrist familiar with Mr. Shenkman.

    - The physician-psychiatrist described Mr. Shemkman as suffering from a neurodevelopmental disorder with cognitive and communicative deficits, consistent with trauma-related psychological distress.

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

- Importantly, the physician-psychiatrist emphasized that Mr. Shenkman does not exhibit a sustained sexual interest in minors, nor is there evidence of predatory intent or contact offenses.

### 3. Objective Testing

Dr. Shiener employed several widely accepted tools to administer objective evidence of his risk of recidivism and future escalation of sexual violence, including:

- Hare Psychopathy Checklist
- Child Pornography Offender Risk Tool (CPORT)
- Correlates of Admitted Sexual Interest in Children Scoring
- Sexual Violence Risk Assessment (SVR-20)
- Historical Clinical Risk Management-20 (HCR-20)

Across all measures, Mr. Shenkman was assessed as **low risk for recidivism**, with no indicators of pedohebephilia (sexual interest in children) or psychopathy.

The Hare Psychopathy Checklist consists of historical and actuarial factors that show when a subject lacks empathy and exploits victims without guilt or remorse. Dr. Shiener explains that researchers have studied it extensively and the scientific community generally accepts it as valid. Law enforcement agencies also use it as a screening tool for prospective candidates. The Hare Checklist contains 20 items, and evaluators score each item based on whether the subject demonstrates the trait. When Dr. Shiener applied the Checklist to Mr. Shenkman, he found:

> Mr. Shenkman generated 19 of 22 factors in the negative. He had 1 item in "possibly present" - "early behavioral problems." He described that as a child he was bullied and occasionally would respond. He was in a particularly rigid educational milieu with strict external controls. He had 2 "present" responses - Lacking in emotional depth and "alcohol or drugs not a direct cause of antisocial behavior" <u>**Overall his profile did not indicate Psychopathy or a tendency to re-offend or exploit victims due to a lack of empathy or inability to experience remorse**</u>.

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

4

The CPORT is a risk assessment tool designed to predict any sexual recidivism for men convicted of child pornography offences. It consists of 7 items:

1. Age at time of investigation
2. Any prior criminal history
3. Any contact sexual offending
4. Any failure on conditional release
5. Indicators of sexual interest in child pornography material or prepubescent or pubescent children
6. More boy than girl content in child pornography
7. More boy than girl content in other child depictions.

Each item on the CPORT carries a value of one point when present. Dr. Shiener's evaluation fully outlines the validity and reliability of the tool; in summary, researchers have subjected it to extensive scrutiny, and voluminous data supports its use. Applying the CPORT to Mr. Shenkman, Dr. Shiener identified only one risk factor—an "indication of sexual interest in child pornography of children." All other items scored negative, which **indicates minimal to no risk of reoffending**.

Dr. Shiener also used the CASIC scale, developed to assess pedohebephilia, in conjunction with the CPORT. He found two pertinent negatives for Mr. Shenkman:

1. no volunteering in a role with high access to children, and
2. no engaging in online communication with a minor or an undercover officer posing as a minor.

Dr. Shiener viewed these results as consistent with Mr. Shenkman's own description that he had become "numb" to the material, and that his progression reflected a search for "more shocking" images in an attempt to "feel something."

Dr. Shiener next administered the SVR-20, a structured professional judgment tool designed to assess the risk of sexual violence in adults. The results indicated **a low to no risk of sexual violence**. He then applied the HCR-20, a widely used violence risk assessment tool

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

that evaluates 20 specific risk factors across three domains: Historical (past behavior), Clinical (current symptoms), and Risk Management (future concerns).

The HCR-20 offers significant benefit because it provides a structured framework for risk evaluation rather than relying solely on actuarial algorithms. This approach allows professionals to integrate multiple data points when formulating risk judgments and developing management plans in forensic and mental health settings. On this test, Dr. Shiener found:

> Mr. Shenkman's history shows **only interest without action**. His clinical condition is one of a chronic mood disorder that directs him inward, with voyeuristic interest and no history of symptoms of acute forms of depression and no history of self-harm. Future concerns are determined by a strong will to face consequences, an apprehension about lengthy confinement and a community that can provide close monitoring and firm external controls (an orthodox observant Jewish community).

In his overall conclusion Dr. Shiener opined that:

> **He does not meet the diagnostic criteria for paraphilia or pedophilia**, and by his descriptions all of his intimate contacts have been adult and heterosexual, and he has never acted on any of his interests. His interests do not seem to be specific or preoccupied in a paraphilic manner, but **only the result of a quest to find material that would be "shocking" to arouse some feelings and to break through the defensive repression and denial**. Based upon the examination I have performed and the documents I have reviewed, I would conclude that Akiva Dovid Shenkman is a chronically depressed victim of a rigid subculture with an unpredictably violent father who engaged in impotent rages and physical abuse. He has no history of violence, and no history of harm to others. He has never used his fists, an automobile, or a weapon to harm another person. He has never had a physical encounter in the "real world" with a sexually inappropriate object, and his primary goal in his limited attempts to establish intimacy have always been with adult women.

> **He represents no risk to the community if provided the opportunity to engage in a therapeutic relationship**. It is clear that he would benefit from such. His ability to tolerate aggressive confrontation during the course of his evaluation with me is also a good prognostic sign, and indicates that he is not likely to lose his composure or resort to violence when confronted or in a situation

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

of desperation. His participation and involvement in a community that has close integration within the group as well as firm external controls that have to some extent been internalized by Mr. Shenkman is also a positive prognostic sign.

*     *     *

I believe these are all representations of his reaction to the traumatic family life that he experienced as a child, and have led to him being chronically withdrawn, experiencing problems with low energy, and difficulty initiating activities. This would be the opposite of a Paraphilic Disorder with any predatory risk. My findings in this area are consistent with his performance on risk measurement tools. The validity and reliability of those tools is discussed at length above. His assessment on those tools is encouraging and a positive prognostic sign.

**If he were returned to his community which would be supportive of him, he would be a candidate for an ongoing intensive therapeutic experience, and if he were in such a situation I believe that he could benefit. I do not believe that Mr. Shenkman or the community would benefit from prolonged confinement**.

**b.   Mitigation Packet by Dr. Gavriel Fagin**

In addition to Dr. Shiener's evaluation and report, Mr. Shenkman requests that the Court take into account the attached Mitigation summary by **Dr. Gavriel Fagin**. **See attached Ex. B, Mitigation Report by Dr. Gavriel Fagin.** The psychological mitigation evaluation of Mr. Shenkman provides critical context for understanding his background, psychological vulnerabilities, and risk profile. This evidence is not offered as an excuse, but as an explanation to guide the Court toward an individualized, balanced sentence

**1.   Early Trauma and Abuse**

**a.   Childhood Sexual Abuse:** Mr. Shenkman experienced sexual abuse by a babysitter within the context of an Orthodox Jewish upbringing. In that community, there is a concept of "personal modesty" which takes the form of suppressing external appearance and action, but most importantly sexual

JAFFE DEFENSE TEAM, P.C.
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

activity and views of sexuality. With this "personal modesty" comes a strict

prohibitions on discussing sexuality that often leaves victims without language

or opportunity to disclose or process abuse. This gave Mr. Shenkman a

situation where his abuse was never properly processed or addressed and is

very likely a contributing factor to the sexual deviance that led to these charges.

b. **Domestic Violence Exposure:** Mr. Shenkman grew up in a home with

recurrent violence, which research shows contributes to long-term emotional

dysregulation, trauma, and maladaptive coping.

c. **Father Absence:** Mr. Shenkman lacked a consistent, supportive father figure.

In Orthodox communities, fathers carry distinct spiritual and social roles,

making absence or dysfunction particularly impactful on attachment and

intimacy development.

2. **Psychological and Emotional Impact**

a. These adversities fostered **emotional blunting, loneliness, and intimacy
deficits** in Mr. Shenkman, which shaped his reliance on fantasy and

maladaptive coping through online sexual material.

b. Research confirms that adverse childhood experiences are disproportionately

represented among offenders of online child sexual abuse material (CSAM),

though not determinative.

3. **Risk of Recidivism**

a. **Low Risk Findings:** Dr. Fagin's structured risk assessments—including the

SVR-20 and HCR-20—are similar to those of Dr. Shiener, indicating a **low

risk of sexual violence or recidivism**.

**JAFFE DEFENSE TEAM,
P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

b.  Importantly, Mr. Shenkman does not meet diagnostic criteria for pedophilia or paraphilia. His online conduct stemmed from a search for increasingly "shocking" material to overcome numbness and depression, not from predatory interest in children.

### 4.  Treatment Potential

a.  Research demonstrates that **evidence-based treatment** (CBT, trauma-focused interventions, pharmacological supports when needed) significantly reduces risk in this population.

b.  Dr. Fagin concludes that Mr. Shenkman is a **strong candidate for intensive outpatient treatment with high likelihood of benefit**, especially when combined with supervision and communal/family involvement.

Dr. Fagin concluded that Mr. Shenkman's case reflects a serious crime, but one emerging from trauma, untreated depression, and maladaptive coping rather than predatory intent. His background, low risk profile, and treatability strongly support a sentence at the statutory minimum, paired with structured treatment and monitoring. This approach aligns with the goals of 18 U.S.C. § 3553(a)—imposing a punishment sufficient, but not greater than necessary, while addressing the underlying issues that contributed to the offense.

In addition to the attached Mitigation Report, Mr. Shenkman also requests that the Court consider the attached proposed Treatment and Risk Management Plan also prepared by Dr. Fagin which addresses the various issues and risks particular to Mr. Shenkman's personal history. **See attached Ex. C, Treatment and Risk-Management Plan.**

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

9

### c. Character Reference Letters

The final piece of mitigation evidence Mr. Shenkman requests the Court to consider is the attached character reference letters authored by family and friends most familiar with Mr. Shenkman throughout his life and circumstances. Mr. Shenkman's therapeutic treatment and ultimate rehabilitation and return to a wholesome and productive life will be enhanced by the unmitigated support and love of his family and close circle of friends. He will also have the guidance of mentors and Rabbis who know him and expressed willingness to guide and help him rehabilitate.  Mr. Shenkman holds these people in high esteem and seeks their approval. These people, who have direct knowledge of some of the traumatic experiences Mr. Shenkman underwent in his childhood, and understand his challenges and his strengths, can provide healthy supervision and sensitive direction and encouragement to help him rebuild his life. They are committed to providing both emotional and material support as Mr. Shenkman undergoes professional therapy. The attached letters, as well as those already submitted to the court, reflect the strong feelings of those who are cognizant of Akiva's personal qualities and potential.

The letters are outlined in the table attached to the letters in Exhibit D. **See attached Ex. D, Compilation of Supporting Character Reference Letters.**

Mr. Shenkman asks that this Court, take these reports and character reference letters as mitigating evidence when considering the sentencing options under the Federal Sentencing Guidelines and the §3553(a) factors.

## IV.    SENTENCING GUIDELINES CALCULATIONS AND § 3553(a) FACTORS

In determining an appropriate sentence, district courts are to consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker,* 543 U.S. 220, 264 (2005). "The

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

Guidelines should be the starting point and the initial benchmark in determining a sentence and a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Lalonde*, 509 F. 3d 750, 763 (6th Cir. 2007)(quoting *Gall b. United States,* 128 S. Ct. 586, 601 (2007)(internal quotations omitted)). "Sentences falling within the applicable Guidelines range are afforded a rebuttable presumption of reasonableness." *Id*. at 770.

In determining the appropriate sentence, the Court should not simply rely on the guidelines calculations but should consider all of the factors in the Sentencing Reform Act, and particularly those set forth in 18 U.S.C. § 3553(a). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; … (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty; and (7) the need to provide restitution to any victims of the offense.

### a.  GUIDELINES CALCULATION

#### i.  **Base Level of Offense**

To determine the base offense level under the Federal Sentencing Guidelines, we look to U.S.S.G. §2G2.2, which applies to most child pornography offenses under Chapter 110 of Title 18. According to the guidelines the base level is 22 level for transportation of child pornography in interstate or foreign commerce. Therefore, the starting base offense level is **<u>22.</u>**

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

### ii.  Enhancement for Relevant Conduct

The Probation Department has scored multiple enhancements for Specific offense Characteristics. The Defendant has no objections to any of the enhancements as all relevant requirements for each enhancement have been met given the facts and circumstances. In total Mr. Shenkman's specific offense characteristic enhancements are **15 levels**, bringing his level up to **37.**

### iii.  Chapter Three Adjustments

Chapter Three Adjustments are divided into several parts which include upward and downward adjustments. The only adjustment pertinent to this matter, is §3E1.1 Acceptance of Responsibility. A Defendant's scoring shall be reduced by 2 levels if the defendant clearly demonstrates acceptance of responsibility for his offense. U.S.S.G §3E1.1(a) Further, an additional 1 level reduction is warranted if the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. U.S.S.G §3E1.1(b). The parties agree that both circumstances are present here and therefore, Mr. Shenkman is entitled to a 3 level reduction in his guidelines scoring.

### iv.  Total Offense Level

Taking all this information into account, Mr. Shenkman's total offense level is scored at a **34.**

### b.  CRIMINAL HISTORY

The next portion of the Sentencing Guidelines considers the Defendant's criminal history and assesses a category I-IV. In Mr. Shenkman's case this is a simple task because **Mr.**

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

**Shenkman has no criminal history**. Therefore under U.S.S.G. §4A1.1, Mr. Shenkman's criminal history category is a **Category I.**

### c.   BASELINE SENTENCING GUIDELINES

Once a Total Offense Level and Criminal History category is found, the Chapter 5 sentencing table indicate the baseline sentencing guidelines. However, it must be noted that while the Sentencing Guideline range is deemed relevant and persuasive, they are not deemed mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). Taking this into account Mr. Shenkman's final baseline guidelines are **151-188 months with a mandatory minimum of 5 years.**

### d.   SENTENCING REFORM ACT FACTORS 18 U.S.C. §3553

This guideline range is not the end of the consideration but just the beginning and the Court has an obligation to take into consideration the factors enumerated under 18 U.S.C. § 3553. While the Sentencing Guideline range is deemed relevant and persuasive, they are not deemed mandatory. *United States v. Booker*, 543 U.S. 220, 260-61 (2005). An appropriate sentencing range is dictated by the specific facts of the case. See e.g. *Gall v. United States,* No. 06-7949, 552 U.S. 38, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. 85 , 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Cunningham v. California,* 549 U.S. 270, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a)). Under the Sentencing Reform Act, as modified

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

by *Booker*, judges are required "to take account of the Guidelines together with other sentencing goals" when fashioning a defendant's sentence. *Booker*, 543 U.S. at 261.

Collectively the cases cited above support the proposition that the district court is free to make its own reasonable application of the § 3553(a) factors. The same position has been fully adopted by Sixth Circuit. The Sixth Circuit Court of Appeals has explained that pursuant to the authority granted to the Courts under 18 U.S.C. § 3553(a)(2)(A), the sentence imposed by the District Court must reflect the seriousness of and provide just punishment for the offense. See e.g., *U.S. v. Fink,* 502 F.3d 585, 588-589 (6th Cir. 2007). A sentence must be both procedurally and substantively reasonable. *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014).

The U.S. Supreme Court has held that the Guidelines are not the only consideration and that the district judge should consider all of the § 3553(a) factors to determine the appropriate sentence. *Gall, 552* U.S. 38, 128 S. Ct. 586, 596 (2007). In fact, as was eloquently set forth by the Ninth Circuit Court of Appeals explained that, in the context of child pornography, courts should consider the applicable Guidelines range as "the starting point and the initial benchmark," *U.S. v. Autery*, 555 F.3d 864, 872 (2009), *quoting Gall,* 552 U.S. at 49, 128 S.Ct. 586. A district court abuses its discretion in the sentencing context if it "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor," *Gall v. United States,* 552 U.S. at 61, 128 S.Ct. at 597; *United States v. Collins*, 828 F.3d 386, 388 (6th Cir. 2016); *United States v. Walters,* 775 F.3d 778, 781 (6th Cir. 2015); *United States v. Conatser,* 514 F.3d 508, 520 (6th Cir.2008). In the context of child pornography offenses, a dramatic downward variance from the Sentencing Guidelines range, when imposing sentence, is not per se or even presumptively unreasonable, where the sentencing court offers a compelling

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

justification based on the relevant statutory sentencing factors that is in proportion to the extent of the variance. See e.g., *United States v. Borho*, 485 F.3d 904, 912 (6th Cir. 2007).

18 U.S.C. §3553 states:

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced;

\*       \*       \*

JAFFE DEFENSE TEAM, P.C.
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

(b) Application of guidelines in imposing a sentence.--

(1) In general.--Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) ***unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2).*** In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

(2) Child crimes and sexual offenses.--

(A)  Sentencing.--In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless--

(i) the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

(ii) the court finds that there exists a mitigating circumstance of a kind or to a degree, that--

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

(I) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

(II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(III) should result in a sentence different from that described; or

(iii) the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

18 U.S.C. §3553

With this in mind, Mr. Shenkman asks the Court to consider the following specific §3553 factors the most when considering a variation from sentencing.

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

17

**i.** <u>**The Nature and Circumstances of the offense and the history and characteristics of the Defendant.**</u>

It must be stressed that Mr. Shenkman understands and appreciates the gravity his actions and that he exploited and victimized numerous children. He is sincerely remorseful about his transgressions and is actively seeking to correct the issues which lead to this offense. However, Mr. Shenkman requests that the Court note that: (a) Mr. Shenkman was a non-contact offender, in that his transgressions were completely detached from any predatory abuse or direct exploitation of a child yet he appreciates that countless children were victimized by his actions; (b) Mr. Shenkman has never enticed or engaged in any sexual acts with a minor; (c) Mr. Shenkman was never a producer of the videos or images which were the subject of this matter. The psychiatric and mitigation evaluations make clear that his offense did not arise from predatory sexual interest in children, but rather from longstanding trauma, emotional blunting, and maladaptive coping. The evidence shows that his consumption escalated as he sought "more shocking" material to feel something amid chronic depression and detachment. This context distinguishes him from offenders who present a sustained sexual interest in minors or predatory risk.

The Sixth Circuit Court of Appeals has explained that, pursuant to the authority granted to the Courts under 18 U.S.C. § 3553(a)(2)(A), the sentence imposed by a district court must reflect the seriousness of and provide just punishment for the offense. See e.g., *U.S. v. Fink*, 502 F.3d 585, 588-589 (6th Cir. 2007). The Sixth Circuit has further explained that although distribution of child pornography is a very serious criminal offense, it was less serious than enticing a child to engage in sexual conduct. *Id*. Specifically, the Sixth Circuit has specifically noted that: "Congress established a series of distinctly separate offenses respecting child pornography, with higher sentences for offenses involving conduct more likely to be, or more

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

directly, harmful to minors" and that "the guidelines [should] clearly reflect consideration of whether and the degree to which harm to minors is or has been involved." *Id*. at 859, quoting *United States v. Duhon*, 440 F.3d 711, 718 (5th Cir.2006).

Mr. Shenkman has absolutely no prior history of any criminal behavior and based on the psychological objective testing he has a low risk of recidivism and does not display a risk of pedohebephilia. Moreover, Mr. Shenkman's background reflects multiple adverse childhood experiences:

- Sexual abuse by a babysitter in the context of an Orthodox Jewish upbringing, where disclosure and discussion of sexuality were culturally restricted.
- Chronic exposure to domestic violence, which research links to long-term difficulties with emotional regulation and attachment.
- Absence of a supportive father figure, depriving him of guidance and stability, particularly significant in his cultural context.

These factors fostered patterns of isolation, detachment, and maladaptive coping. Importantly, all risk assessment tools confirm that he poses a low risk of recidivism, and evaluators concluded he does not meet the criteria for pedophilia or paraphilia.

Dr. Shiener's application of multiple objective testing shows low to no risk of reoffending.

- The Hare Psychopathy Checklist showed no signs of psychopathy or a tendency to re-offend or exploit victims due to a lack of empathy or inability to experience remorse.
- The Child Pornography Offender Risk Tool (CPORT) and the Correlates of Admitted Sexual Interest in Children scoring both indicate minimal to no risk of re-offending and are consistent with Mr. Shenkman's assertion that he was becoming "numb" to the stimuli and that the steady progression of the material was a function of seeking "more shocking" material so he could "feel something."
- Sexual Violence Risk Assessment (SVR-20), and the Historical Clinical Risk Management-20 (HCR-20) both indicated low risk of future actions of sexual violence and only interest without action.

JAFFE DEFENSE TEAM, P.C.
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

All of this, taken together along with Dr. Shiener's overall opinion show that Mr. Shenkman's personal characteristics favor a minimal term of imprisonment.

### ii. Need to Protect the Public and for Deterrence

There can be no doubt that the protection of the public from sexual predators is a high priority for the American Justice system. The prevention of the victimization of these children is of the utmost necessity when tailoring sentences for crimes involving Child Sexually Abusive Material. With this in mind the Court must also take into account specific offender circumstances and in Mr. Shenkman's case, all objective evidence points toward no risk of future harm should Mr. Shenkman get appropriate mental and emotional health assistance. Dr. Shiener's findings do not indicate that Mr. Shenkman has any sexual interest in children and that the possession of these images and videos was more for the "shock" of the disturbing images.

All objective testing done by Dr. Shiener indicates that there is minimal to no risk to the public should Mr. Shenkman be released at the conclusion of a minimal term of imprisonment. Again, all the testing outlined above shows that he is not a psychopath and poses low to no risk of reoffending or escalating his actions. All of this points to the fact that a minimal term of imprisonment should be imposed and by doing so, it will protect the public while also deterring others and Mr. Shenkman from further crimes.

Mr. Shenkman was a non-contact offender who displays no indications of escalation based on objective testing. He has shown great contrition and remorse for his mistake and will spend many nights regretting his actions asking God for forgiveness. He has suffered serious consequences as a result of his actions and will carry this with him for the rest of his life. He does not pose a danger to children or to anyone in the community given the objective testing

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

showing low risk of recidivism. But his circumstances show that while incarcerated and thereafter, Mr. Shenkman's mental and emotional health issues need to be addressed.

The statutory minimum of five years is a significant term of imprisonment. It reflects the seriousness of CSAM offenses while acknowledging that this Defendant's risk profile and offense dynamics differ materially from those of predatory or contact offenders. A sentence greater than the minimum would not further the goals of just punishment but would instead disregard the individualized context Congress and the Supreme Court require sentencing courts to consider.

General deterrence is satisfied by the imposition of a five-year federal prison sentence. Specific deterrence and protection of the public do not require a sentence beyond the statutory minimum because:

- Risk assessments (SVR-20, HCR-20, CPORT, CASIC) consistently rated him as low risk.
- He has no history of contact offending or predatory behavior.
- His offense conduct stemmed from untreated trauma and depression, both of which can be addressed through treatment and monitoring.

### iii.   <u>The Kinds of Sentences Available and Avoiding Unwarranted Sentencing Disparity</u>

The Parties agree that the Sentencing Guidelines calculate a range of 151–188 months. Under Mr. Shenkman's plea, he must serve a mandatory minimum sentence of five years' imprisonment. Considering all factors outlined above and Mr. Shenkman's low risk of recidivism, the Defendant asks the Court to impose the five-year minimum sentence.

The Guidelines range set forth above is advisory in nature and the Court may adopt an upward or downward variance from these guidelines based upon the facts of the case. The Court should therefore look at the calculations as a starting point only. Moreover, because the child pornography Guidelines do not reflect the Sentencing Commission's unique institutional

JAFFE DEFENSE TEAM, P.C.
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

strengths, the Court should afford them less deference than it would to empirically grounded guidelines.

The Court also must consider the need to avoid unnecessary sentencing disparities. According to the Judiciary Sentencing Information (JSIN) during the last five fiscal years (FY2020-2024), there were 775 defendants whose primary guideline was §2G2.2, with a Final Offense Level of 34 and a Criminal History Category of I.  For the 774 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 109 month(s). As outlined in the graph below pulled from the JSIN. of those sentences, 22% were within their guidelines range, <1% were an upward departure or variance, and **77% were a downward departure or variance**.



[SPACE LEFT INTENTIONALLY BLANK FOR FORMATTING PURPOSES]

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

**V.     CONCLUSION**

For all of the above reasons, the Defendant respectfully requests that the Court impose a sentence which considers bother guidelines range of 151-188 months and the factors set forth in 18 U.S.C. § 3553(a). And find that a sentence of the minimum **5 years** is an appropriate downward variance given the specific defendant circumstances.

Respectfully submitted,
JAFFE DEFENSE TEAM, P.C.

By: _____
Jack L. Jaffe (P27576)
Attorneys for Defendant
411 W. 13 Mile, Suite 150
Madison Heights, MI 48071
(248) 588-2297

Dated: September 8, 2025

**JAFFE DEFENSE TEAM, P.C.**
411 West 13 Mile Rd.
Suite 150
Madison Heights, MI 48071

(248) 588-2297
Fax (248) 588-6075

23