# EXHIBIT F

# Gerald A. Shiener, M. D.
Distinguished Life Fellow, American Psychiatric Association
251 East Merrill
Suite 230
Birmingham, Michigan 48009

(248) 645-5155
Telephone

(248) 645-2665
Telecopier

September 12, 2025

Jack L. Jaffe, Attorney at Law
411 W. 13 Mile Rd.
Suite 150
Madison Heights, Michigan 48071

Re:   Akiva Dovid Shenkman

Dear Mr. Jaffe:

I had an opportunity to conduct a psychiatric evaluation on Akiva Dovid Shenkman on July 3, 2025. He was referred to me by your office for the purpose of performing a psychiatric evaluation relative to criminal charges that he is facing.

In addition to conducting a psychiatric evaluation, I have had an opportunity to review documentation as follows:

1.   Discovery packet.
2.   "Email from friend".
3.   Extensive conversation from Mr. Shenkman's uncle, Yitschak Shkop.

I reported my findings to you in a September 1, 2025 narrative. I discussed his diagnosis, and used several instruments/tests to assess his risk of recidivism and risk to the community. In my discussion I stated:

## DISCUSSION

Akiva Dovid Shenkman is currently in Federal custody having pled guilty to possession of graphic child pornography. He describes a history of growing up in a very strict rigid cultural milieu with significant social isolation in a family with a handicapped mother, multiple older siblings, limited social relationships. His mother was handicapped and preoccupied with caring for the patient and his siblings, and his father was characterized as being unpredictably angry, physically abusive, and engaging in impotent rages.

Mr. Shenkman grew up as an intimidated child withdrawn into fantasy with repressed emotions and repressed memories, professing to have limited recollection of his childhood experiences, and only being able to produce them when actively and aggressively confronted with the demand that he do so. This is a common reaction in individuals who

Re: Akiva Dovid Shenkman
September 12, 2025
Page 2

grow up in a traumatic environment, and the most primitive line of defense is that of denial or "blocking out" memories of unpleasant experiences and uncomfortable affects. This tends to create an emotional "numbing" as described in the trauma literature. In an effort to overcome the emotional numbing, victims often become attracted to experiences of excitement - skydiving, auto racing, extreme sports, risk taking, and graphic sexual material. In the latter, excitement is not as closely associated with the risks of harm associated with other extreme physical endeavors. The arousal of graphic sexual material occurs remotely, without risk and in isolation.

He has never had a model of an appropriate adult reciprocal relationship, and his attempts at engaging in such relationships are limited and conducted at a distance. He states that he was exposed to graphic images when he was quite young, and his quest was for graphic images that were more and more unconventional "so I could feel something", which appears to be an attempt to block through the repression and denial that he used to deal with the chaotic environment in which he was raised.

He does not meet the diagnostic criteria for paraphilia or pedophilia, and by his descriptions all of his intimate contacts have been adult and heterosexual, and he has never acted on any of his interests. His interests do not seem to be specific or preoccupied in a paraphilic manner, but only the result of a quest to find material that would be "shocking" to arouse some feelings and to break through the defensive repression and denial.

Based upon the examination I have performed and the documents I have reviewed, I would conclude that Akiva Dovid Shenkman is a chronically depressed victim of a rigid subculture with an unpredictably violent father who engaged in impotent rages and physical abuse. He has no history of violence, and no history of harm to others. He has never used his fists, an automobile, or a weapon to harm another person. He has never had a physical encounter in the "real world" with a sexually inappropriate object, and his primary goal in his limited attempts to establish intimacy have always been with adult women.

He represents no risk to the community if provided the opportunity to engage in a therapeutic relationship. It is clear that he would benefit from such. His ability to tolerate aggressive confrontation during the course of his evaluation with me is also a good prognostic sign, and indicates that he is not likely to lose his composure or resort to violence when confronted or in a situation of desperation. His participation and involvement in a community that has close integration within the group as well as firm external controls that have to some extent been internalized by Mr. Shenkman is also a positive prognostic sign.

His chronic depression has affected his cognition and his ability to access memories of his childhood and take in information and record it, and engage in the educational process.

Re:   Akiva Dovid Shenkman
September 12, 2025
Page 3

His ability to function in a very traditional educational system such as is found in Orthodox Judaism was very limited, and he described that he only "floated through" these educational experiences as a child. As an adult, he is more capable of forming a mentoring relationship within his community.

I believe these are all representations of his reaction to the traumatic family life that he experienced as a child, and have led to him being chronically withdrawn, experiencing problems with low energy, and difficulty initiating activities. This would be the opposite of a Paraphilic Disorder with any predatory risk. My findings in this area are consistent with his performance on risk measurement tools. The validity and reliability of those tools is discussed at length above. His assessment on those tools is encouraging and a positive prognostic sign.

If he were returned to his community which would be supportive of him, he would be a candidate for an ongoing intensive therapeutic experience, and if he were in such a situation I believe that he could benefit. I do not believe that Mr. Shenkman or the community would benefit from prolonged confinement.

INTERIM REVIEW:
I have since received a portion of the prosecutors brief to the court describing risk to the community and suggesting to the court that any recommendations of leniency be viewed with a "skeptical eye" based on a quote from the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 5th Ed. Amer. Psych. Assn. (2013). The manual is a technical document that strives to determine group of consensual descriptive diagnostic categories to aid in communication and research among clinicians and investigators of the nature, cause and treatment of these disorders. It is a work in progress, and subject to numerous revisions and restatements. To define the nature of its uses and appropriate applications, there are disclaimers and cautionary statements in the manual:

> Clinical training and experience are needed to use DSM for determining a diagnosis. The diagnostic criteria identify symptoms, behaviors, cognitive functions, personality traits, physical signs, syndrome combinations, and durations that require clinical expertise to differentiate from normal life variation and transient responses to stress. To facilitate a thorough examination of the range of symptoms present, DSM can serve clinicians as a guide to identify the most prominent symptoms that should be assessed when diagnosing a disorder. Although some mental disorders may have well-defined boundaries around symptom clusters, scientific evidence now places many, if not most, disorders on a spectrum with closely related disorders that have shared symptoms, shared genetic and environmental risk factors, and possibly shared neural substrates (perhaps most strongly established for a subset of anxiety disorders by neuroimaging and animal

Re: Akiva Dovid Shenkman
September 12, 2025
Page 4

models). In short, we have come to recognize that the boundaries between disorders are more porous than originally perceived.

However, the use of DSM-5 should be informed by an awareness of the risks and limitations of its use in forensic settings. When DSM-5 categories, criteria, and textual descriptions are employed for forensic purposes, there is a risk that diagnostic information will be misused or misunderstood.ons of its use in forensic settings. When DSM-5 categories, criteria, and textual descriptions are employed for forensic purposes, there is a risk that diagnostic information will be misused or misunderstood. These dangers arise because of the imperfect fit between the questions of ultimate concern to the law and the information contained in a clinical diagnosis. In most situations, the clinical diagnosis of a DSM-5 mental disorder such as intellectual disability (intellectual developmental disorder), schizophrenia, major neurocognitive disorder, gambling disorder, or pedophilic disorder does not imply that an individual with such a condition meets legal criteria for the presence of a mental disorder or a specified legal standard (e.g., for competence, criminal responsibility, or disability). For the latter, additional information is usually required beyond that contained in the DSM-5 diagnosis, which might include information about the individual's functional impairments and how these impairments affect the particular abilities in question. It is precisely because impairments, abilities, and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability.

Use of DSM-5 to assess for the presence of a mental disorder by nonclinical, nonmedical, or otherwise insufficiently trained individuals is not advised. Nonclinical decision makers should also be cautioned that a diagnosis does not carry any necessary implications regarding the etiology or causes of the individual's mental disorder or the individual's degree of control over behaviors that may be associated with the disorder. Even when diminished control over one's behavior is a feature of the disorder, having the diagnosis in itself does not demonstrate that a particular individual is (or was) unable to control his or her behavior at a particular time.

The editors of DSM-5, like those of previous editions, have clearly indicated that the classification system's primary goal is "first and foremost to be a useful guide to clinical practice." The goals of psychiatric evaluations conducted for clinical treatment and research differ from those conducted for forensic purposes; the methodology of each type of evaluation is subject to different standards and ethics, as well. Moreover, psychiatric diagnoses cannot of themselves establish any legally significant findings regarding the past or present mental state of an individual or the degree of responsibility for his behavior. The manual must be used by experienced clinicians, for the purpose of diagnosing and

Re:  Akiva Dovid Shenkman
September 12, 2025
Page 5

treating illness. It is not to be used by non-clinicians in other (forensic) settings in a "cook book" fashion, especially in the prediction of future behavior, or in the application of prognosis based simply on the description of a disorder.

In the case of Mr. Shenkman, his lack of any evidence of having acted on his interest in his object of arousal, his co-morbid diagnosis of depressive illness, and his limitations of real world experiences to adult women, in conjunction with his results on tools of assessment (tests) indicate low risk for acting, and for recidivism. His responses to inquiry into his communications with providers of the material in question, that they were "ploys" or "ruse" to obtain more material is more consistent with the evidence in this matter.

If you have any further questions regarding my evaluation, diagnosis, or recommendations, please feel free to contact me at my office address.

Very truly yours,

*Gerald A. Shiener, M.D.*

Gerald A. Shiener, M. D.
Diplomate of the American Board of Psychiatry and Neurology
Added qualifications in Addiction, Forensic and Geriatric Psychiatry, Psychosomatic Medicine and Brain Injury Medicine

Medical Director Integrated Care and Consultation Liaison Services
Wayne State University Physicians Group

Chief of Psychiatry
Sinai Grace Hospital of Detroit

Professor of Psychiatry and Behavioral Neurosciences
Wayne State University School of Medicine

GAS/rll