**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: November 04, 2026

Ms. Julie A. Beck
Office of the U.S. Attorney
for the Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Mr. Jack L. Jaffe
30701 Barrington Street, Suite 100
Madison Heights, MI 48071-5114

Mr. Matthew S. Kolodziejski
Law Office
200 E. Big Beaver Road
Troy, MI 48083

Re: Case No. 25-1852, *USA v. Dovid Shenkman*
Originating Case No. 2:24-cr-20668-1

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0444n.06

Case No. 25-1852

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 04, 2026
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DOVID AKIVA SHENKMAN, aka Akiva Dovid Shenkman,

Defendant - Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: GIBBONS, LARSEN, and RITZ, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. After Akiva Dovid Shenkman[1] pled guilty to the transportation and possession of child pornography, the district court imposed a below-Guidelines sentence of 95 months of imprisonment and 10 years of supervised release. On appeal, Shenkman contends that this sentence is both procedurally and substantively unreasonable.

## I.

While Shenkman was re-entering the United States after a trip to Canada, border agents learned he was under investigation in a case involving child sexual abuse material (CSAM). Complying with the agents' request, Shenkman unlocked his two cell phones and allowed border agents to inspect them. The agents found what appeared to be CSAM on both phones. Shenkman was then arrested. He eventually pled guilty to transportation and possession of child pornography.

[1] The docket refers to appellant as "Dovid Akiva Skenkman," but Shenkman's legal name is "Akiva Dovid Shenkman."

At Shenkman's sentencing hearing, the district court determined that his Guidelines range was 151–188 months. Shenkman objected to an enhancement for the use of a computer and the inclusion of details about the CSAM and related messages in the presentence report (PSR). He also argued that he did not knowingly enter his plea. The district court overruled these objections.

After discussing the sentencing factors set out in 18 U.S.C. § 3553(a), the district court sentenced Shenkman to 95 months of imprisonment, followed by a 10-year term of supervised release. The district court imposed several special conditions of supervised release, including:

> You must not have direct contact with any child you know or reasonably should know to be under the age of 18, including your own children, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, including your own children, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places. . . .
>
> You must not provide care or live in a residence where children under the age of eighteen (18) reside, without prior approval of the probation officer.

DE 43, Judgment, Page ID 469. Shenkman did not raise any additional objections. He then appealed his sentence.

**II.**

We review sentences imposed by the district court for reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Criminal sentences must be both procedurally and substantively reasonable. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019).

"A sentence is procedurally reasonable if the district court did not commit any significant procedural errors, such as failing to 'properly calculate the guidelines range, . . . consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select

the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022) (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)). If a defendant does not object to a procedural error at the time of sentencing, his claim may only be reviewed for plain error. *Id.* Under that standard, a defendant must show "(1) an error, (2) that is plain, (3) that affects his substantial rights, and (4) that 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Clay*, 162 F.4th 757, 766 (6th Cir. 2025) (per curiam) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

"For a sentence to be substantively reasonable," on the other hand, "it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *Zabel*, 35 F.4th at 504 (quoting *United States v. Young*, 847 F.3d 328, 371 (6th Cir. 2017)). "A defendant 'is not required to object to the substantive reasonableness of his sentence to preserve that issue for appeal.'" *United States v. Thomas-Mathews*, 81 F.4th 530, 538 (6th Cir. 2023) (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009)).

**III.**

Shenkman claims his sentence is both procedurally and substantively unreasonable, arguing: (1) the district court did not address his mitigation arguments; (2) the district court should not have concluded that his messages "revved" others up; (3) the PSR incorrectly stated that Shenkman was arrested in 2017; (4) the district court failed to properly weigh the § 3353(a) factors; (5) the district court did not explain its justification for imposing special conditions of supervised release; and (6) a special condition gave probation officers too much discretion to determine whether he could associate with his future children.

**A.**

Shenkman contends that his sentence is procedurally unreasonable because the district court did not address three of his mitigation arguments at sentencing. Because Shenkman did not raise this objection at sentencing, plain error review applies.

The district court's explanation of its sentence may be brief, but it "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). If "the district court wholly fails to address 'legitimate mitigating arguments raised by the defendant,'" then the sentence is procedurally unreasonable. *United States v. Johns*, 65 F.4th 891, 893 (6th Cir. 2023) (quoting *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018)). But "we have never required district courts to engage in a 'formulaic point-by-point refutation of a defendant's mitigation arguments.'" *Id.* (quoting *Sweeney*, 891 F.3d at 239). "Rather, the district court's reasons for rejecting the arguments need only be apparent from the sentencing transcript as a whole." *United States v. Brinda*, 851 F. App'x 565, 568 (6th Cir. 2021). This is particularly true "when a defendant raises a bevy of mitigation arguments all falling under the general rubric of 'history and characteristics,' which collectively may matter little when weighed against the reality of a serious federal offense." *Johns*, 65 F.4th at 894 (quoting *Brinda*, 851 F. App'x at 569). Additionally, it is not unreasonable for a district court to fail to address sentencing arguments "raised only in passing." *Brinda*, 851 F. App'x at 568 (quoting *United States v. Brooks*, 628 F.3d 791, 798 (6th Cir. 2011)). In sum, this is "a very deferential standard." *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009).

Shenkman alleges that the district court did not address his arguments that: (1) he "was raised in a dysfunctional household, lacked the steady presence of his father, and was exposed to domestic violence;" (2) he "suffered from [a] neurodevelopmental disorder with cognitive and communicative deficits, consistent with trauma-related psychological distress;" and (3) his "early development . . . 'was marred by trauma, detachment, and difficulties with intimacy.'" CA6 R. 15, Appellant Br., at 19 (quoting DE 38, Def.'s Sentencing Mem., Page ID 301, 305–06, 316–17). These arguments are interrelated, focusing on Shenkman's adverse childhood experiences and their aftermath.

During the sentencing hearing, the district court acknowledged and asked pointed follow-up questions about Shenkman's adverse childhood experiences. The district court specifically referenced information from the "Mitigation Packet" included in Shenkman's sentencing memorandum. DE 47, Sentencing Hr'g Tr., Page ID 550 (citing DE 38, Def.'s Sentencing Mem., Page ID 305). That same mitigation report discussed Shenkman's "domestic violence exposure" and the absence of "a consistent, supportive father figure" in his life. DE 38, Def.'s Sentencing Mem., Page ID 305–06; *see Johns*, 65 F.4th at 894 ("More to the point, unlike in [*United States v. Gapinski*, 561 F.3d 467 (6th Cir. 2009),] where there was no evidence that the district court considered the defendant's key mitigation argument, here the district court discussed [the defendant's] 'well-written' sentencing memorandum and referenced the many mitigating circumstances that she raised . . . .").

The district court also referenced the broader argument Shenkman made about his trauma-related mental health conditions. In his sentencing memorandum, Shenkman argued that "[t]he psychiatric and mitigation evaluations make clear that his offense did not arise from predatory sexual interest in children, but rather from longstanding trauma, emotional blunting, and

maladaptive coping," which "distinguishes him from offenders who present a sustained sexual interest in minors or predatory risk." DE 38, Def.'s Sentencing Mem., Page ID 316. During the sentencing hearing, in response to the government's argument that Shenkman has a sexual interest in children, the district court asked the government: "Why, though, isn't it plausible that especially with this graphic and horribly disturbing stuff, [that] he's looking at it . . . to feel something. Why isn't that plausible?" DE 47, Sentencing Hr'g Tr., Page ID 593. So, notwithstanding Shenkman's assertion to the contrary, the district court afforded adequate consideration to his trauma-related mental health conditions. *See Johns*, 65 F.4th at 894 (finding no procedural error where arguments not specifically addressed by the district court "merited only a passing reference . . . by [defense counsel] at sentencing").

Moreover, the district court considered Shenkman's "personal history and characteristics," which would include these adverse childhood experiences and related mental health issues, while discussing sentencing factors, and then again as bases for a downward variance. DE 47, Sentencing Hr'g Tr., Page ID 596, 611–12. The district court ultimately rejected Shenkman's proposed sentence as insufficient considering "the seriousness of the offense, and the other factors that . . . weigh[ed] more in favor of a higher sentence," such as the need for deterrence and protection of the public. *Id.* at 599–600, 602. This is a sufficient explanation of Shenkman's sentence. *See Brinda*, 851 F. App'x at 569 ("The district court stated that it had 'considered [the defendant's] history and characteristics,' but decided that nothing about this background warranted a lower sentence in light of [the defendant's] misconduct. . . . The court thus impliedly found that [the defendant's] risks to the public (and in particular to children) outweighed the interests that [the defendant] invoked, including his elderly father's needs.").

Accordingly, there was no error, much less plain error.

**B.**

Next, Shenkman argues that the district court erred by concluding that his graphic messages got people "revved up," or encouraged them to engage in similar conduct. CA6 R. 15, Appellant Br., at 22–23. Not only was there no objection during the sentencing hearing, but defense counsel conceded, "In terms of revving up, . . . if the Court will accept the fact that most of what my client had done was, again, to . . . in some way enable him to get more [CSAM,] then . . . I can't disagree." DE 47, Sentencing Hr'g Tr., Page ID 560; *see Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 495 (6th Cir. 2020) ("Once litigation commences, a party is typically bound by its action," including "an argument to the court by its counsel."). Still, we will address the merits of Shenkman's claim.

When a district court bases a sentence on "clearly erroneous facts," that sentence is procedurally unreasonable, *Gall*, 552 U.S. at 51, and, in some circumstances, it may violate due process, *see Townsend v. Burke*, 334 U.S. 736, 741 (1948) (due process violation arises when sentence rests on "extensively and materially false" foundation, "which the prisoner had no opportunity to correct by the services which counsel would provide"); *United States v. Tucker,* 404 U.S. 443, 591-92 (1972) (sentence was based on "misinformation of constitutional magnitude" when district court relied on prior convictions that were, themselves, "wholly unconstitutional"); *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (noting defendant's duty to "establish that the challenged evidence is materially false or unreliable, and that [it] served as the basis for the sentence"). But "[a]s long as the district court has interpreted the evidence in a manner consistent with the record, 'the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *United States v. McAllister*, 491 F. App'x 569, 572 (6th Cir. 2012) (quoting *Regalado v. United States,* 334 F.3d

520, 524 (6th Cir. 2003)). And "[w]hile it is true that courts cannot sentence defendants based on speculation or unfounded assumptions, they also are not limited to facts admitted by the parties or proven beyond a reasonable doubt. Instead, a sentencing court can rely on any fact that is supported by a preponderance of the evidence." *United States v. Bunkley*, 732 F. App'x 388, 391 (6th Cir. 2018) (citations omitted).

During the sentencing hearing, the district court discussed its concerns about the chats:

> [T]he most concerning is the suggestion in there that he was involved in inducing people to do bad stuff. That's very serious. But even if that's not the case, even if he was just throwing out fluff, my concern about these text messages is they were getting other people revved up. You have Mr. Shenkman and other individuals who have an interest in child pornography, you know, you can just see them getting each other going talking about this erotic experience that they each had.

DE 47, Sentencing Hr'g Tr., Page ID 558. And when describing the nature of the offense, the district court stated:

> [T]he chats were so graphic and so disturbing and so encouraging of antisocial assaultive behavior, that the nontechnical term I have for this is, getting people revved up. I mean, it's not too far of a leap to say that after one of these spirited text exchanges with you, somebody could have gone out and produced some of this stuff or done some of these acts. This was being encouraged. So even if it didn't actually get to that point, this revving up and creating more of an appetite for this horrible, horrible stuff, and encouraging others to be seeking this horrible stuff, all of that, to me, makes this a very serious matter.

DE 47, Sentencing Hr'g Tr., Page ID 595–96.

These characterizations of the chats are clearly supported by the record—excerpts of messages in the government's sentencing memorandum show Shenkman and another user discussing the CSAM that they shared and asking about the ages of the child victims, and Shenkman claimed to have personally committed hands-on sexual abuse of children and shared graphic details.

Some of the messages mentioned, however, cannot be found in the record. During the hearing, the government presented the district court with printed copies of samples of Shenkman's messages. These copies were first shown to defense counsel. The government had included some of these messages in its sentencing memorandum but excluded others—including messages that referenced "snuff," referring to videos of people being killed—due to their graphic nature. *Id.* at 586. The district court ordered the government to file the excluded messages in the record. The government has not filed a supplement to its sentencing memorandum.

While there is no doubt the government should have heeded the district court's order, any deficiency in the record does not help Shenkman. The district court's statements are adequately supported by the messages that are in the record. And, going into the sentencing hearing, Shenkman already had "an adequate incentive to present any evidence or arguments" to counter the graphic nature of his exchanges with other individuals since similar text exchanges were discussed in the government's sentencing memorandum and the PSR. *United States v. Patrick*, 988 F.2d 641, 648 (6th Cir. 1993); *see Bunkley*, 732 F. App'x at 392.

Accordingly, any error was harmless. *See Patrick*, 988 F.2d at 647-48.

**C.**

Shenkman asserts that the PSR incorrectly stated he was arrested in 2017 for possession of child pornography.

A defendant who fails to object to a PSR accepts all factual allegations contained in it. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). "At sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ." Fed. R. Crim. P.

32(i)(3)(B). A "casual reference" does not trigger the district court's obligations under Rule 32(i)(3)(B). *United States v. Caballero*, 417 F. App'x 500, 504–05 (6th Cir. 2011).

Shenkman did not object to the PSR's inclusion of his arrest. Still, Shenkman argues that he disputed the PSR because he asserted that he had no prior criminal history. But both the government and the district court agreed Shenkman has no prior criminal history. And the PSR itself states that "[t]he defendant does not have a prior criminal history," finding a criminal history score of zero. Under the Sentencing Guidelines, the "criminal history category" only includes prior sentences, not arrests, so this is not necessarily inconsistent with the PSR's inclusion of an arrest. U.S.S.G. § 4A1.1 (2025). We will therefore not construe Shenkman's reference to his lack of criminal history as an objection to the PSR.

Accordingly, Shenkman must demonstrate that the district court committed plain error. As discussed above, a sentencing court's reliance on "materially false or unreliable" information can result in a procedurally unreasonable sentence. *Adams*, 873 F.3d at 517.

Even assuming that the PSR incorrectly stated that Shenkman was arrested, courts are generally entitled to rely on the PSR, and "[w]e can find no reason to require a district court to make independent findings outside the PSR when the facts are undisputed." *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003); *United States v. House*, 872 F.3d 748, 752 (6th Cir. 2017). Any error was therefore not plain. *See Treadway*, 328 F.3d at 886. Moreover, Shenkman's criminal history category was not affected. And Shenkman only asserts that he was not actually arrested. He does not argue that the PSR's description of the incident is inaccurate, and, regardless, the PSR makes clear that no charges were filed. This error would therefore not have affected his substantial rights or seriously interfered with the fairness, integrity, or public reputation of the judicial proceedings.

In conclusion, there was no plain error.

**D.**

Shenkman also asserts that his sentence is substantively unreasonable because the district court failed to properly weigh the § 3353(a) factors, resulting in a longer sentence than necessary.

Balancing these factors "is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Rayyan*, 885 F.3d at 442 (citing *Gall*, 552 U.S. at 51). Sentences within the guidelines range are presumptively reasonable. *United States v. King*, 184 F.4th 511, 519 (6th Cir. 2026). So a defendant's burden to demonstrate that a below-guidelines sentence "is unreasonably long is even more demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Shenkman's 95-month sentence is much lower than the guideline range of 151–188 months and lower than both the average sentence (109 months) and median sentence (97 months) for similarly situated defendants. His 10-year term of supervised release is also within the guidelines range of 5 years to life. Shenkman's sentence is therefore presumptively reasonable, and he fails to overcome this presumption. To arrive at this sentence, the district court balanced Shenkman's "uniquely positive features"—such as his family support, ties to his community, and remorse—with "the uniquely serious" nature of his case, noting that the materials Shenkman possessed were "among the worst of the worst." DE 47, Sentencing Hr'g Tr., Page ID 595, 601. And as discussed above, the district court considered mitigating evidence.

Thus, the district court did not abuse its discretion when balancing the § 3353(a) factors.

**E.**

Shenkman also challenges the special conditions of supervised release that would prevent him from living or associating with his hypothetical children without the permission of a probation officer.

**1.**

Shenkman first argues that his sentence is procedurally unreasonable because the district court did not explain its justification for imposing special conditions prohibiting his association with any future children of his own without permission from a probation officer. Shenkman did not raise this objection at sentencing, so the plain error standard applies.

A district court must "state in open court . . . its rationale for mandating special conditions of supervised release." *United States v. Carter*, 463 F.3d 526, 528–29 (6th Cir. 2006) (citation modified). But a district court's discussion of the sentencing factors may provide sufficient justification for both the terms of imprisonment and supervised release. *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012) (citing *United States v. Presto,* 498 F.3d 415, 419 (6th Cir. 2007)). For example, this court affirmed a district court's imposition of a special condition preventing a defendant convicted of knowingly coercing and enticing a minor to engage in sexual activity from having any contact with minor children without prior court approval. *Id.* There, the district court did not address the special condition explicitly, but we found that its discussion of the § 3553(a) factors, especially regarding public safety, was "relevant to the conditions imposed by the district court and make[s] the basis of its decision sufficiently clear on the record to permit reasonable appellate review." *Id.* (internal quotation marks omitted).

"[I]f the record clearly shows why the district court imposed the conditions that it did, then the district court's failure to explain its reasons for imposing special conditions of supervised

release will amount to harmless error, making a remand unnecessary." *United States v. Doyle*, 711 F.3d 729, 734 (6th Cir. 2013). So, for example, where a record was devoid of any evidence relating to alcohol or drug dependence, the imposition of special conditions requiring drug and alcohol testing, mandating disclosures regarding prescription medications, and barring alcohol consumption without explanation was plain error. *United States v. Inman*, 666 F.3d 1001, 1005, 1007 (6th Cir. 2012) (per curiam).

Even where a defendant was convicted of knowingly receiving child pornography, we held, albeit in an unpublished decision, that the district court abused its discretion by imposing, without explanation, a special condition preventing him "from all contact with minors—even his own daughter—absent a probation officer's approval." *United States v. Widmer*, 511 F. App'x 506, 513 (6th Cir. 2013) (hereinafter *Widmer I*). "[B]ecause [the defendant] never solicited or physically harmed a child, the record lacks an obvious rationale for imposing such a restriction." *Id.* On remand, the district court imposed the same restriction and found that it was "reasonably related to the history and characteristics of the Defendant and the nature and circumstances of the offense":

> Again, the Defendant has been convicted of receiving child pornography, which, by definition, includes a sexual interest in minor children. And as the Government notes, the materials he possessed included prepubescent children in sexual contact with other adults and other children. The Defendant argues or points out that he has not had any contact offenses or used the internet to entice a minor. While that may be true, this does not negate what he actually did, which is receive child pornography including sadistic images. Moreover, the results of his previous evaluations, according to this court's review of the record, do indicat[e] some sexual interest in children, and at least one doctor has opined that the Defendant could or may sexually act out in the future.

*United States v. Widmer*, 785 F.3d 200, 204–05 (6th Cir. 2015) (hereinafter *Widmer II*) (citation omitted). Considering these remarks by the district court, we held the district court provided adequate explanation. *Id.* at 204.

In this case, the district court did not address its rationale for the special conditions of supervised release specifically. But it did discuss the need to protect the public when deciding Shenkman's sentence:

> I have to consider protecting the public from further crimes by you. And I'd like to think, given what you've gone through so far, and what you're going to go through, it's unlikely that you're going to do this again. [The government] does make a fair point that your level of [immersion] into [this] stuff seems to be even higher than many other cases we have seen. It's going to take a lot of work to make sure you're not back in this stuff again. But I think that this goal is achieved both through a meaningful custodial sentence and a lengthy term of supervised release, that keeps a close eye on you and provides you with very important support as you are dealing with these issues.

DE 47, Sentencing Hr'g Tr., Page ID 599–600. The district court also considered what the government referred to as Shenkman's longstanding sexual interest in children and described the child pornography that Shenkman possessed as "among the worst of the worst," and his online chats as "graphic," "disturbing," and "encouraging of antisocial assaultive behavior." *Id.* at 595–96, 599.

And unlike *Widmer I*, there is at least some evidence that Shenkman physically harmed children, even though the only evidence is his statements in chats, and the veracity of these chats was questioned during the hearing. *See Widmer I*, 511 F. App'x at 512.[2]

Although it was the defense's theory, supported by a doctor's report, that Shenkman only looked at child pornography to feel something, it is obvious why the district court would restrict Shenkman's association with minors—he possessed particularly disturbing CSAM and claimed to have sexually abused children. And it is unnecessary to consider Shenkman's arguments that the condition implicated his parental rights. Shenkman does not have children. "Potential future

---

[2] Regardless, because *Widmer I* is an unpublished decision, it is not precedentially binding and only considered for its persuasive value. *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

descendants . . . do not suffice to invalidate a condition of supervised release under § 3583(d)." *United States v. Shultz*, 733 F.3d 616, 623 (6th Cir. 2013). If Shenkman has children of his own in the future, he may then ask the district court to modify his conditions of supervised release. *Id.*; 18 U.S.C. § 3583(e)(2).

Accordingly, any procedural error did not affect Shenkman's substantial rights.

**2.**

Finally, Shenkman argues that the special conditions of supervised release unreasonably provide a probation officer with unlimited discretion.[3]

"Special conditions that implicate fundamental rights are generally upheld if they are primarily designed to meet the ends of rehabilitation and protection of the public." *Widmer II*, 785 F.3d at 207 (internal quotation marks omitted) (quoting *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997)). We have found that a probation officer is "well placed to assess whether [a defendant] poses a danger to a particular child, making it reasonable to entrust him with responsibility for deciding whether the child would be safe when left in [the defendant's] company." *Shultz*, 733 F.3d at 620.

That reasoning also applies here: A probation officer would be able to determine whether Shenkman posed a danger to his future children. *See Widmer II*, 785 F.3d at 206 ("A defendant convicted of possessing child pornography need not have previously assaulted a minor to justify the imposition of a restriction on the defendant's association with minors.").

[3] To the extent that Shenkman is now raising the constitutional argument that this special condition violated the non-delegation doctrine, we have not yet addressed this issue and there is a division of authority, so any error is not plain. *Shultz*, 733 F.3d at 621; *Widmer II*, 785 F.3d at 209 n.1.

Because this condition is reasonably related to the goal of protecting the public, specifically any of Shenkman's future children, it is not unreasonable.

**IV.**

Accordingly, we affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-1852

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DOVID AKIVA SHENKMAN, aka Akiva Dovid Shenkman,

Defendant - Appellant.

**FILED**
Nov 04, 2026
KELLY L. STEPHENS, Clerk

Before: GIBBONS, LARSEN, and RITZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens

Kelly L. Stephens, Clerk